IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* DENISE S. BRUNSON and MICHELLE P. RONK, individually, Bringing this Action on Behalf of the United States Government,<br><br>    Plaintiffs,<br><br>v.<br><br>NARROWS HEALTH & WELLNESS LLC, an Alabama Corporation,<br><br>    Defendant. | CIVIL ACTION NO.<br>2:06-CV-1148-AR |

## **MEMORANDUM OPINION**

Before the court is the motion of defendant Narrows Health & Wellness LLC ("Narrows") to dismiss the second amended qui tam complaint filed by plaintiffs Denise S. Brunson ("Brunson") and Michelle P. Ronk ("Ronk") (together, "plaintiffs"). Narrows contends that plaintiffs' second amended qui tam complaint fails to conform to the particularity requirements set forth in Rule 9(b), Fed.R.Civ.P. Narrows also contends that plaintiffs' second amended qui tam complaint fails to state a cognizable claim for relief, and should be dismissed under Rule 12(b)(6). For the reasons that follow, Narrows's motion will be granted in part and denied in part.

*Facts*

Narrows is an Alabama corporation with its main office in Birmingham. It is owned in equal shares by physicians Edward

Payson Daugherty, D.O. ("Dr. Daugherty"), Jerry Bruce Hankins, M.D., and David John Pavlokovic, M.D.  Brunson and Ronk are individual residents of Alabama, each of whom worked for Narrows in or with Narrows's coding and billing department; Brunson worked at Narrows from April 2003 until April 2006, and Ronk worked there from June 2003 until February 2006.  Plaintiffs filed this qui tam action on behalf of the United States on June 12, 2006, alleging that Narrows violated the False Claims Act, 31 U.S.C. § 3729.  Plaintiffs amended their complaint two months later, adding a claim that Narrows retaliated against them in violation of 31 U.S.C. § 3730(h).  On September 11, 2006, Narrows moved to dismiss plaintiffs' amended qui tam complaint for failing to comply with Rule 9(b).  On October 5, 2006, the court granted Narrows's motion without prejudice, and concurrently granted plaintiffs leave to amend to meet the minimum pleading requirements set forth in Rule 9(b).

   Plaintiffs filed their second amended complaint on October 19, 2006.  In it, plaintiffs added significant detail regarding Narrows's allegedly fraudulent activity.  At the heart of these allegations is Narrows's treatment of Medicare claims.  Plaintiffs allege that Narrows submitted falsified code-based billing records to private companies that have contractual relationships with the federal government.  These companies serve as intermediaries in the Medicare system by receiving and processing Medicare claims

2

submitted by medical-service providers such as Narrows. The companies to which Narrows submitted Medicare claims were Cahaba Government Benefit Administrators of Alabama ("CGBAA") and United Healthcare ("UH"). The general framework of the claims-submission process is that Narrows would submit a claim to CGBAA or UH, the receiving company determined the amount of reimbursable costs based on the particular medical services provided, and the company then reimbursed to Narrows the appropriate amount. Plaintiffs allege that Narrows purposefully submitted documents bearing erroneous billing codes to CGBAA and UH so that it would be reimbursed for services that it did not actually provide.

Narrows filed its present motion to dismiss on November 2, 2006, contending that plaintiffs' second amended qui tam complaint still lacks the minimum specificity requirements of Rule 9(b) for pleading a claim under the False Claims Act. In a hearing on November 17, 2006, the court asked the parties to address whether the plaintiffs' second amended qui tam complaint properly alleges that Narrows presented false claims "to an officer or employee of the United States Government" as required by 31 U.S.C. § 3729(a)(1). Both plaintiffs and Narrows filed a response to this question on December 1, 2006. Narrows contends that plaintiffs' description of the claims-submission procedure described in plaintiffs' second amended qui tam complaint falls short of alleging that Narrows presented a false claim "to an officer or

employee of the United States Government." The court will treat this assertion as a motion to dismiss for failure to state a claim under Rule 12(b)(6).

*Analysis*

**I. Narrows's Rule 9(a) Motion**

Narrows alleges that plaintiffs' second amended qui tam complaint fails to comply with Rule 9(b) under the standard set forth in *United States ex rel. Clausen v. Laboratory Corp. of America, Inc.*, 290 F.3d 1301 (11th Cir. 2002). In *Clausen*, the Eleventh Circuit observed that in order to satisfy Rule 9(b) in a False Claims Act case, "a plaintiff must plead facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them." 290 F.3d at 1310. In affirming the district courts' dismissal of the action, the court in *Clausen* observed that "[n]o amounts of charges were identified. No actual dates were alleged . . . . No copy of a single bill or payment was provided . . . . [S]ome of this information for at least some of the claims must be pleaded in order to satisfy Rule 9(b)." *Id.* 1312 and n.21. Narrows argues that similar to the case in *Clausen*, plaintiffs' second amended complaint fails to satisfy the minimum specificity requirements of Rule 9(b).

Plaintiffs do not deny that their second amended complaint fails to identify specific Medicare claims that contain indicia of

Narrows's alleged fraud, but they argue that their second amended complaint meets the requirements of Rule 9(b) for the same reasons that were present in *United States ex rel. Hill v. Morehouse Medical Associates*, Inc., 2003 WL 22019936 (11th Cir., Aug. 15, 2003). In that unpublished opinion, the Eleventh Circuit found that the facts before it were materially distinguishable from those of *Clausen*, and accordingly reversed the district court's finding that Rule 9(b) was not met. *See Hill*, at *5. Conceding plaintiffs' assertion that the facts of *Hill* are "almost, if not completely, identical to those presented in this case," Narrows does not attempt to refute the substance of plaintiffs' argument or to distinguish *Hill* from the facts of this case. Instead, Narrows urges the court not to follow *Hill* because that decision was wrongly decided and lacks merit. Narrows emphasizes that *Hill* was an unreported decision, and it further contends that *Hill* runs contrary to the Eleventh Circuit's binding precedent in *Clausen* – an opinion with which *Hill* does not quarrel, unless implicitly. The potentially dispositive issue is therefore whether *Hill* is bad law, or whether *Hill* and *Clausen* can co-exist.

As a preliminary matter, the Eleventh Circuit's rule regarding unpublished opinions is instructive: "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2. While this court recognizes that *Hill* is not **binding** authority, it will consider *Hill* insofar as

5

that case can be reconciled with binding precedent and constitutes **persuasive** authority.

With respect to the potential conflict between *Hill* and *Clausen*, the court concludes that the two cases are not fundamentally inconsistent. In *Hill*, the Eleventh Circuit held that plaintiffs with inside information should be given leniency in meeting the Rule 9(b) pleading requirements in False Claims Act cases. *See Hill*, at *3. This is the same rationale plaintiffs presently urge upon the court in opposing Narrows's motion to dismiss. Narrows argues that this holding runs counter to the Eleventh Circuit's observation in *Clausen* that "an insider might have an easier time obtaining information about billing practices and meeting the pleading requirements under the False Claims Act." 290 F.3d at 1314. Narrows contends that the court must reject plaintiffs' argument, because it is based on a subsequently decided, unpublished, and inconsistent decision.

The court disagrees with Narrows for two reasons. First, the Eleventh Circuit's observation in *Clausen* regarding company insiders was *dicta*, directed at hypothetical facts which were not then before that court. The *Clausen dicta* is not binding on this court, just as it was not binding on the Eleventh Circuit's panel when it decided *Hill* without addressing it. Second, the Eleventh Circuit carefully articulated the reasons why it reached a different conclusion in *Hill* than it did in *Clausen*, and this court

has no reason to believe that it did so with reckless disregard to its prior, binding decision. *See Hill*, at \*4. Accordingly, the excerpt regarding company insiders from *Clausen* does not strip *Hill* of its persuasive value.

Having determined that *Hill* contains legitimate precedential value, the court adopts its reasoning and will deny Narrows's motion to dismiss based on Rule 9(b). The facts now before the court are materially indistinguishable from those of *Hill*, which states a proposition that Narrows does not dispute. Rule 9(b) requires that "[i]n all averments of fraud . . . the circumstances constituting fraud . . . shall be stated with particularity." Fed.R.Civ.P. 9(b). To comply with Rule 9(b), the "plaintiff must plead facts as to time, place, and substance of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them." *Clausen*, 290 F.3d at 1311. In *Hill*, the Eleventh Circuit recognized that "Rule 9(b)'s heightened pleading standard may be applied less stringently . . . when specific factual information about the fraud is peculiarly within the defendant's knowledge or control," provided that the complaint sets forth a factual basis for the plaintiff's belief. *Hill*, at \*3 (citations omitted). The court then explained that such was the case before it, particularly inasmuch as the plaintiff worked in the very department of the defendant where the alleged fraud occurred, and that the plaintiff therefore had firsthand information about the defendant's internal

7

billing practices and allegedly fraudulent billing schemes. *Id.*, at *5.

The Eleventh Circuit in *Hill* found that the plaintiff had sufficiently pled her fraud claim under Rule 9(b). As a result of having firsthand knowledge of the defendant's allegedly fraudulent activities, the plaintiff specifically identified confidential documents which contained evidence of fraud and which were in the defendant's exclusive possession, described in detail the defendant's billing practices and how billing codes were fraudulently altered, provided names of certain individuals who made the fraudulent changes, and referred to the exact clinic locations at which the fraudulent alterations took place. *Id.*, at *4. In light of plaintiff's specific allegations, her status as an insider with firsthand knowledge, and the absence of any evidence that the plaintiff's allegations were spurious, the court found that the plaintiff's complaint met the specificity requirements of Rule 9(b). *Id.*, at *5.

As relators in the instant case point out – and as Narrows does not dispute – the facts that led the Eleventh Circuit to find that the complaint in *Hill* accorded with Rule 9(b) are also present here. Plaintiffs worked in the very department of Narrows where the allegedly fraudulent billing schemes were implemented. Plas.' Second Am. Qui Tam Compl. (Doc. No. 16), at ¶¶ 7-8. They personally observed Narrows's billing practices and have firsthand

information about Narrows's implementation of the allegedly fraudulent billing schemes. *Id.* at ¶¶ 7, 8, 23-49. As in *Hill*, plaintiffs witnessed the alleged alteration of billing codes. *Id.* at ¶¶ 26-34. Plaintiffs have identified specific documents which are in the exclusive possession of Narrows. *Id.* at ¶¶ 34, 42, 45. They have supported their legal theory with facts describing Narrows's billing process, the specific codes that were allegedly altered or "up-coded," the frequency with which the allegedly fraudulent claims were submitted, and the time frame in which the allegedly fraudulent activity occurred. *Id.* at ¶¶ 23-49. They have provided the name of a person responsible for the alleged fraud (Dr. Daugherty), and they have identified the clinic where the codes were allegedly altered or intentionally mis-coded. *Id.* at ¶¶ 28-29, 32-33. And as in *Hill*, plaintiffs were privy to the files, computer systems, and internal billing practices that are the subjects of their complaint. *Id.* at ¶ 23. In short, the facts presently before the court are virtually identical to those in *Hill*. Either *Hill* correctly states Eleventh Circuit law or it is an aberration that can be ignored. This court is persuaded by its reasoning.

The court finds that plaintiffs' second amended qui tam complaint meets the pleading requirements set forth in Rule 9(b), for the same reasons as the Eleventh Circuit did in *Hill*. In order to sufficiently plead a claim under the False Claims Act,

plaintiffs must only "plead the details of [Narrows's] allegedly fraudulent acts, when they occurred, and who engaged in them." *Clausen*, 290 F.3d at 1310. Here, plaintiffs plead the "what" in sufficient detail, specify the "when" as between 2003 and 2006 (with one specific date of on or about November 15, 2005), and identify the "who" as Dr. Daugherty. The court is therefore satisfied that plaintiffs have met the Rule 9(b) standard.

**II. Narrows's Rule 12(b)(6) Motion**

After the court instructed the parties to ponder the applicability of the holdings of *United States ex rel. Atkins v. McInteer*, 345 F. Supp. 2d 1302 (N.D. Ala. 2004), and *United States ex rel. Totten v. Bombardier Corp.*, 380 F.3d 488 (D.C. Cir. 2004), *cert. denied* 544 U.S. 1032 (2005), Narrows filed a supplemental brief in which it suggests that application of the holdings of *McInteer* and *Totten* demand dismissal of this action under Rule 12(b)(6). In *Totten*, the D.C. Circuit held that the False Claims Act does not apply to a claim presented not to the federal government, but to a federal "grantee," when there is no evidence that the claim was ever subsequently presented to a government officer or employee. 380 F.3d 488 at 493. A "grantee" is a non-governmental entity that receives money or property from the federal government. *Id.* at 491.

In its lower-court *McInteer* decision, this court applied *Totten* to that False Claims Act case in which the plaintiff alleged

fraudulent abuse of the Medicaid system.  This court explained in *McInteer* that the Medicaid procedures require physicians in Alabama to submit reimbursement claims to the Alabama Medicaid Agency, which is a government grantee.  *Id.*  Importantly, there was no direct evidence in *McInteer* that any of the allegedly fraudulent Medicaid claims were ever presented to an officer or employee of the federal government.  345 F. Supp. 2d at 1304.  The Eleventh Circuit affirmed this court's decision in *United States of America ex rel Atkins v. McInteer, et al.*, No. 04-16167, 2006 WL 3461441 (11th Cir., Dec. 1, 2006), but did not address the merits of this court's *Totten* analysis and affirmed judgment on other grounds.

Relying on *Totten* and this court's and the Eleventh Circuit's *McInteer* decisions, Narrows contends that this case must be dismissed because no allegedly false claim was ever "presented . . . to an officer or employee of the United States Government," as required by 31 U.S.C. § 3729(a)(1).  Plaintiffs counter that this statutory requirement has been met, asserting that CGBAA and UH are agents of the federal government for purposes of the False Claims Act.  Plaintiffs argue that because Narrows submitted allegedly fraudulent Medicare claims to these private companies, Narrows is amenable to liability under the False Claims Act.

The court finds no proof that CGBAA and UH are governmental agents and cannot take judicial notice of something it has doubts about.  Private companies that enter contracts with the federal

11

government do not consequently become the government or agents of the government.  CGBAA and UH are federal grantees, not governmental agents, in the same way that the Alabama Medicaid Agency is a grantee and not an agent of the government.  Nevertheless, that CGBAA and UH are grantees does not end the inquiry.  As the D.C. Circuit in *Totten* explained, it is not necessary under  31 U.S.C. § 3729(a)(1) for the defrauding party to "present" a fraudulent claim to an officer or employee of the federal government, so long as the fraudulent claim is eventually "presented" to such an officer or employee by someone.  *See* 380 F.3d at 493.  Liability under the False Claim Act may therefore attach if a fraudulent claim is presented to a non-government intermediary, and the intermediary subsequently presents the claim to an officer or employee of the United States government.[1]  *See id.*

From the face of plaintiffs' second amended qui tam complaint, it is not clear whether or not any allegedly false claims were ever presented to an employee or officer of the United States government.  Plaintiffs say that Narrows submitted claims to CGBAA and UH, but they do not explain in any detail the relationship between CGBAA / UH and the federal government.  Did CGBAA and UH

---

[1] The court recognizes that this might run contrary to what this court said in *McInteer*, namely, that "[i]f the *Totten* court is correct, fraud perpetrated upon a non-federal agency cannot form the basis for an FCA claim just because the non-federal agency thereafter presents a claim for payment to a federal official."  345 F. Supp. 2d at 1304.

forward Narrows's Medicare claims to employees or officers of the United States government on a rolling basis, so that CGBAA and UH could be reimbursed for monies they paid to Narrows?  Did CGBAA and UH keep Narrows's Medicare claims for a designated amount of time, and them submit a batch of claims to officers or employees of the United States government for bulk reimbursement?  Did CBGAA and UH simply provide to officers or employees of the United States government an accounting of the Medicare payments they made to Narrows, without forwarding the actual claims?  Did CBGAA and UH receive a lump sum from the federal government from time to time, that sum having had a designated value independent of the amount in payments CBGAA and UH paid to Narrows?  Plaintiffs' second amended complaint leaves these questions unanswered, and the court cannot tell from its face whether the allegedly false claims were ever presented to an officer or employee of the United States government.[2]  Accordingly, plaintiffs' second amended qui tam complaint must be dismissed without prejudice for failing to state a claim for which relief can be granted.

*Conclusion*

For the foregoing reasons, the court will deny Narrows's motion to dismiss plaintiffs's second amended qui tam complaint for failing to comply with Rule 9(b).  Narrows's Rule 12(b)(6) motion

---

[2] Although the court has focused its analysis on § 3729(a)(1), plaintiffs also fail to state a claim under subsections (a)(2) through (a)(7).

to dismiss will be granted with the right to amend again.  If plaintiffs elect to file a third amended qui tam complaint, their description of how Narrows's allegedly fraudulent claims were "presented" to an officer or employee of the United States must meet the specificity requirements of Rule 9(b) or they run the risk of having their action dismissed with prejudice.

     DONE this 18th day of December, 2006.

                                        _____
                                        WILLIAM M. ACKER, JR.
                                        UNITED STATES DISTRICT JUDGE